http://www.va.gov/vetapp16/Files3/1626407.txt

Citation Nr: 1626407 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 05-27 541 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia

THE ISSUE

Entitlement to an initial compensable disabling rating for cirrhosis.

REPRESENTATION

Appellant represented by: Daniel G. Krasnegor, Attorney at Law

ATTORNEY FOR THE BOARD

K. Fitch, Counsel

INTRODUCTION

The Veteran served on active duty from June 1971 to June 1973. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a
December 2011 rating decision of the Department of Veterans Affairs (VA)
Regional Office (RU) in Roanoke, Virginia, that granted entitlement to service connection for cirrhosis and assigned a noncompensable evaluation. The Veteran filed a notice of disagreement dated in April 2012 with the evaluation, and the RO issued a statement of the case dated in December 2012. The Veteran's attorney filed a statement in lieu of Form 9 received on February 5, 2013.

This matter was remanded in December 2014 for additional development. For the reasons indicated below, the agency of original jurisdiction complied with the Board's remand instructions. Stegall v. West, 11 Vet. App. 268, 271 (1998).

In a March 2016 letter, the Veteran's attorney requested that the Board wait the full 90 days from its March 1, 2016 letter indicating that the case had been returned to the Board's docket before issuing its decision, in order for additional argument to be submitted. As more than 90 days has elapsed since March 1, 2016 and no additional argument has been submitted, the Board will decide the claim.

FINDING OF FACT

The Veteran's cirrhosis has been asymptomatic for the appeal period; symptoms such as weakness, anorexia, abdominal pain, and malaise have not been found

CONCLUSION OF LAW

The criteria for an initial compensable disability rating for cirrhosis are not met. 38 U.S.C.A. § 1155, 5107 (West 2014); 38 C.F.R. § 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.14, 4.112, 4.113, 4.114, Diagnostic Code 7312 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. VCAA.

VA has a duty to notify the Veteran under 38 U.S.C.A. § 5103(a) (West 2014) and 38 C.F.R. § 3.159(b) (2015), including information and evidence necessary to substantiate the claim; information and evidence that VA would seek to provide; information and evidence that the he was expected to provide; and information about the process by which initial disability ratings and effective dates are assigned, as required by Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

In this case, the Veteran's claim arises from an appeal of the initial evaluation following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, and additional notice is not required as any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is needed under VCAA.

The "duty to assist" contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2015). VA has done everything reasonably possible to assist the Veteran with respect to his claim for benefits in accordance with 38 U.S.C.A. § 5103A (West 2014) and 38 C.F.R. § 3.159(c) (2015). Relevant service treatment and other medical records have been associated with the claims file. The Veteran was also afforded VA examinations in connection with the claim that, taken together, fully address the criteria for deciding the claim. In this regard, the Board notes that the examiners reviewed the Veteran's medical history and claims file and offered reasoned opinions based on a review of the relevant evidence. 

This matter was remanded in December 2014 in order to provide the Veteran an additional VA examination in connection with his claim. This examination was accomplished in January 2015 and adequate addresses the questions posed in the December 2014 remand. As such, the Board finds that there has been substantial compliance with the terms of the Board's remand directives. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

II. Analysis.

In evaluating the severity of a certain disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7Vet. App. 55, 58 (1994). Separate ratings may be assigned for separate periods of time based on the facts found. This practice is known as "staged ratings." Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

If the evidence for and against a claim is in equipoise, the claim will be granted. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

The Veteran's cirrhosis is evaluated as noncompensable under 38 C.F.R. § 4.114; Diagnostic Code 7312. Under Diagnostic Code 7312, a 10 percent evaluation is warranted for symptoms such as weakness, anorexia, abdominal pain, and malaise. A 30 percent evaluation is warranted for portal hypertension and splenomegaly, with weakness, anorexia, abdominal pain, malaise, and at least minor weight loss. A 50 percent evaluation is warranted for a history of one episode of ascites, hepatic encephalopathy, or hemorrhage from varices or portal gastropathy (erosive gastritis). A 70 percent evaluation is warranted for a history of two or more episodes of ascites, hepatic encephalopathy, or hemorrhage from varices or portal gastropathy (erosive gastritis), but with periods of remission between attacks. A 100 percent evaluation is warranted for generalized weakness, substantial weight loss, and persistent jaundice, or with one of the following refractive to treatment: ascites, hepatic encephalopathy, hemorrhage from varices or portal gastropathy (erosive gastritis). The term "substantial weight loss" is defined as a loss of greater than 20 percent of baseline weight, sustained for three months or longer; and the term "minor weight loss" is defined as a weight loss of 10 to 20 percent of baseline weight, sustained for three months or longer. See 38 C.F.R. § 4.112.

In this regard, the Board notes that, although other diagnostic codes pertaining to the digestive system contemplate the same or similar symptoms of the Veteran's cirrhosis, this disability may not be rated by analogy under any other diagnostic codes because cirrhosis is a distinct diagnosis that is supported by the medical evidence of record. This diagnosis is expressly listed in the rating schedule and contemplates the Veteran's symptoms and overall disability picture for this condition. See 38 C.F.R. § 4.20; see generally 38 C.F.R. § 4.113. 

The medical evidence in this case consists of outpatient treatment records and VA examinations dated in March 2004, December 2011, October 2013, and January 2015.

The Veteran asserts that he has fatigue due to cirrhosis. He also indicated that a higher evaluation was warranted based on findings that his cirrhosis was an active condition. In this regard, the Board notes that service connection for the Veteran's cirrhosis was made effective in December 2002. 

A January 2002 pathology report noted elevated ALT and AST, chronic active Hepatitis C. A July 1998 report gave an impression of moderate chronic hepatitis with early cirrhosis compatible with a history of hepatitis C virus infection. A March 2003 VA treatment notes for Hepatitis C indicated that symptoms associated with that condition were mild fatigue. The Veteran denied worsening depression, dizziness, palpitations, chest pain, or SOB at rest.

An August 2003 report of the Veteran's physician reported that the Veteran was diagnosed with Chronic Hepatitis C virus (HCV) infection in 1994. He underwent a liver biopsy in April of 1995 that revealed chronic resistant hepatitis without cirrhosis. The Veteran had a repeat liver biopsy in July of 1998 that showed moderate active hepatitis with early cirrhosis. He was treated briefly with interferon but had to discontinue treatment secondary to medication costs. His last liver biopsy was performed in January of 2002 that was again consistent with early cirrhosis.

In a VA examination report dated in March 2004 in connection with his Hepatitis Colonel and cirrhosis claims, the Veteran denied vomiting, hematemesis, or melena, and indicated that he had received no treatment for cirrhosis of the liver. He indicates no distention of the abdomen but did report abdominal pain and fevers. He denied nausea or vomiting, but reported fatigue, weakness, and depression, along with anxiety related to his condition. The Veteran indicated that his abdominal pain occurred at least three to four times per month and resolved on its own and would last for about two to three minutes. On examination, the veteran was without ascites and had weight gain of approximately seven pounds in the past three months. There was no reported steatorrhea, malabsorption, or malnutrition. In February 2002, a right upper quadrant limited Doppler indicated cirrhotic changes of the liver without discrete intrahepatic mass with dilated bile duct. The Veteran was noted to have cirrhosis diagnosed in approximately 1992-93. Cirrhosis of the liver was evident on liver biopsies and also ultrasound. The examiner found that it was as likely as not that the hepatitis C was noncontributory to the Veteran s cirrhosis of the liver. It was noted that there was evidence of extensive alcohol abuse in the past.

A VA examination in December 2011 indicated no signs or symptoms attributable to cirrhosis of the liver. The Veteran was not on any medication for treatment of cirrhosis, and the examiner indicated that the Veteran's chronic obstructive pulmonary disease was the Veteran's primary disabling condition. The daily fatigue was indicated to be due to the COPS. The Veteran described some nausea periodically and the examiner stated this is was likely attributable to the Veteran's history of gastrointestinal/reflux esophagitis and not the liver condition, especially in light of recent lab tests showing normal ALT and AST and history of sustained virologic response since 2002.

An additional examination was completed in October 2013. Based on a review of the claims file and medical records, the examiner found that the Veteran had none of the symptoms required for a higher evaluation, including weakness anorexia, abdominal pain, or malaise. The examiner indicated that this was documented in the reviewed evidence of record. The examiner noted that the Veteran's attorney had indicated that the Veteran's cirrhosis was active, but also noted that active did not necessarily refer to active symptoms. The examiner reported that active cirrhosis findings only had to do with the biopsy findings and not to the symptoms. As such, the examiner found that the Veteran had none of the following symptoms that include weakness, anorexia, abdominal pain, or malaise.

Finally, the Veteran was afforded a VA examination dated in January 2015. The Veteran's diagnosis of cirrhosis was confirmed and the examiner found that the condition was active, but also indicated in the medical history section that "the current symptoms are none," and responded in the negative to the question, "Does the Veteran currently have any signs or symptoms attributable to cirrhosis of the liver, biliary cirrhosis or cirrhotic phase of sclerosing cholangitis."

Additional outpatient records were also reviewed. The findings contained in the medical records did not indicate symptoms greater than those found on the VA examinations. In this regard, the Board that the Veteran was seen in September 2015. The physician indicated that the Veteran had HCV and cirrhosis. It was also noted that the Veteran was cured of Hepatitis C in 2002 with pegIFN/ribavirin. A biopsy performed 2002 showed 3/4 fibrosis and the Veteran was noted to be cirrhotic on imaging. There was no history of hepatic decompensation and no problems with hepatic encephalopathy. The Veteran was without complaints of swelling, confusion, nausea, vomiting, jaundice, melena, hematochezia or hematemesis. The Veteran also denied any dysphagia or odynophagia. The Veteran reported that he quit alcohol use in 2000, when he was told he had liver disease March 2015 imaging indicated no ascites, among other findings. 
Based on the foregoing, an initial compensable rating for cirrhosis is not warranted. The medical evidence for the appeal period does not indicate weakness, anorexia, abdominal pain, or malaise due to the cirrhosis. The Veteran is competent to report such symptoms and has reported fatigue. The primary issue in this case is, however, whether the Veteran's symptoms are due to his cirrhosis. Although veterans are competent to opine as to some medical matters, the question of which disease particular symptoms are attributable to is one that relates to an internal medical process which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Jandreau v. Nicholson, 492 F.3d 1372, 1377, n. 4 (Fed. Cir. 2007) ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). The Veteran's statements on this question are not competent.

In this regard, the Board notes that, in his February 2013 statement in lieu of a VA Form 9 (substantive appeal), the Veteran's attorney argued that the recent VA examinations should not be relied on to determine whether the Veteran had symptoms from cirrhosis from the December 2002 effective date of the grant of service connection and that a medical opinion should be obtained on this question. He also contended that, at a minimum, VA should assist the Veteran in obtaining the complete medical treatment records of Dr. L. and Dr. G. However, a review of the Veteran claims file indicates that G is nurse practitioner at the VA that treated the Veteran primarily for his Hepatitis C in the 2002-03 time frame, and L is a pathologist with VA that made the indications of early cirrhosis at approximately the same time. As the claims file appears to contain all of the Veteran's chronological records of his treatment with VA, a remand for additional records related to treatment by G and L would only duplicate what is of record. In addition, the Board notes that in the September 2015 treatment note set forth above, the physician reviewed the Veteran's medical history found that while the Veteran was cirrhotic in 2002, his hepatitis C had been cured at that time. Since that time, the record is devoid of symptoms related to cirrhosis that would indicate a higher evaluation and the examinations have consistently found as much. An additional examination would only review the findings already of record and is therefore not warranted. 

The Board also finds that the schedular rating criteria adequately describe the Veteran's symptoms and disability. As the cirrhosis has been asymptomatic, there are no symptoms that are not contemplated by the criteria. See Thun v. Peake, 22 Vet. App. 111 (2008). Consequently, there is no basis for referral for a higher rating on an extraschedular basis. 38 C.F.R. § 3.321(b)(1). Finally, in Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), the Federal Circuit held that "[t]he plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities." Here, however, the issue has not been argued by the Veteran or reasonably raised by the evidence of record. The Veteran has not asserted, and the evidence of record does not suggest, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Yancy v. McDonald, 27 Vet. App. 484, 495 (Fed. Cir. 2016) ("the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities"). The Board will therefore not address the issue further.

For the foregoing reasons, the preponderance of the evidence is against an initial compensable disability rating for cirrhosis. The benefit of the doubt doctrine is therefore not for application and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3.

 

ORDER

An initial compensable disability rating for cirrhosis is denied.

____________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs